# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

February 1, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

PAULA LYNN BARNETT,                )
                                   )
       Plaintiff/Appellee,         )        Hamilton Chancery No. 63302
                                   )
v.                                 )
                                   )        Appeal No. 03A01-9709-CH-00414
ROBERT McALISTER BARNETT, III,     )
                                   )
       Defendant/Appellant.        )


APPEAL FROM THE CHANCERY COURT OF HAMILTON COUNTY
AT CHATTANOOGA, TENNESSEE


THE HONORABLE L. MARIE WILLIAMS, JUDGE


For the Plaintiff/Appellant:          For the Defendant/Appellee:

David Haines Rotroff                   Sandra J. Bott
Chattanooga, Tennessee                 Chattanooga, Tennessee



**AFFIRMED IN PART, REVERSED
IN PART, MODIFIED AND REMANDED**



HOLLY KIRBY LILLARD, J.



CONCURS:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This is a post-divorce action to modify child support and alimony. The mother sought to increase child support, and the father sought to terminate periodic alimony payments. The trial court granted the mother's request for an increase in child support, with a portion of the child support to be placed in an educational trust, and denied the father's petition for modification of alimony. Both parties appealed. We affirm in part, reverse in part, and modify.

Robert McAlister Barnett ("Father") and Paula Lynn Barnett ("Mother") were married in 1972. Mother was employed during the first ten years of their marriage, while Father pursued a medical education. Father became a general surgeon and Mother did not work outside the home after the parties' children were born. The parties were divorced in 1986. At the time of the divorce, the parties' son Joshua was three years old and their daughter Katie was an infant. The final decree of divorce required Father to pay $500 per week as child support and $300 per week in periodic alimony. Father remarried shortly after the divorce from Mother, and has children from his second marriage.

In 1996, Mother filed a petition to increase the awards of child support and alimony. Father responded by seeking increased visitation with the children and a reduction in child support, as well as reduction or termination of the periodic alimony.

At trial, the proof indicated that Mother's income is approximately $28,000 per year. The parties' daughter Katie was enrolled in a public school. Their son Joshua is a gifted student and is enrolled at McCallie School in Chattanooga. The annual tuition at McCallie is approximately $10,500.

Father's income as a general surgeon is in excess of $200,000 per year. In addition, evidence indicated that Father's current wife, employed as a technician in Father's medical practice, was paid approximately $30,000 per year more than other similarly-situated technicians.

After the parties' son was accepted at McCallie School in 1995, Father declined to pay the $10,500 annual tuition. The evidence indicated that Mother borrowed the funds for the tuition.

The majority of the trial was held before Judge Howard Peoples. However, toward the latter part of the proceedings, Judge Peoples recused himself. The case was transferred to Judge L. Marie Williams, who reviewed the transcript of the evidence heard by Judge Peoples, heard additional evidence, and conducted an in-chambers meeting with the parties' minor children.

Judge Williams found that the evidence indicated that the parties' children were treated

differently from Father's children with his current wife, and that this differing treatment distressed the children. The trial judge noted her belief that the different treatment was unintentional and ordered additional counseling. She denied Father's petition for increased visitation but modified the existing visitation arrangement by ordering Mother to acquiesce in the children's reasonable requests for additional visitation with Father.

The trial court found Father's annual income for child support purposes to be $209,206. Based on this income, child support was set at $3,700 per month. The trial court ordered that $3,000 per month would be paid to Mother, with the remaining $700 per month to be paid into an educational trust for the benefit of the parties' daughter Katie. The trial court stated:

> In setting the child support at this amount, the Court finds the tuition of Josh at McCallie School is an extraordinary educational expense to be paid by Paula Barnett out of the monthly child support received by Paula Barnett. . . . Should Josh Barnett cease attending McCallie School or an educational institution for which tuition is charged, the monthly support will be reduced to $2,000.00 and a payment of $850.00 for each child will be made into an educational trust by Dr. Barnett.

The trial court denied both parties' petitions for modification of alimony. Mother was awarded $15,000 in attorney's fees and other costs of litigation.

Both parties appeal. Father argues on appeal that the trial court erred in not permitting him to present evidence regarding the initial award of alimony, asserting that this prevented him from establishing a change of circumstances to support a reduction or termination of the award of periodic alimony. He contends that the trial court erred in denying his petition to reduce or terminate the periodic alimony, and in awarding Mother attorney's fees and expert witness fees.

Mother argues on appeal that the trial court erred in determining the amount of child support, in requiring that a portion of the child support be placed in an educational trust for the parties' daughter, and in failing to require Father to pay additional child support for the extraordinary educational expenses for Joshua's private school tuition. Mother also contends on appeal that the trial court erred in denying her petition to increase the payments of periodic alimony, and seeks attorney's fees for this appeal.

Our review of this is governed by T.R.A.P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a

2

presumption of correctness of the findings of fact, unless the evidence preponderates otherwise. *See* T.R.A.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

On appeal, Father argues first that he was precluded from introducing evidence indicating that the alimony awarded in the divorce decree was based on the presumption that Mother was unable to work. Father asserts that he sought to have witnesses, including Mother, testify that prior to the divorce Mother said that she was mentally disabled from working because of the divorce, but within months after the divorce became final, Mother obtained a job. When he sought to question Mother on these issues, Father says that the trial court would not permit it, stating "We're not going behind the decree." Father contends that the trial court's award in the divorce decree of periodic alimony, instead of rehabilitative alimony, must have been based on an implicit finding that Mother "was not feasibly rehabilitable." Consequently, he asserts that the trial court erred in refusing to allow him to present this evidence.

Mother notes that Father made no offer of proof on the evidence he sought to present, and that consequently there is no way to determine from the record whether the evidence would have been admissible or relevant. She argues further that Father waived his right to object to the alimony based on Mother's employment because she had been employed since 1986 and Father filed no petition to reduce the alimony until Mother sought an increase in child support and alimony. She also notes that counsel for Father repeatedly objected to Mother introducing evidence of events that occurred prior to the divorce, and that Father's objections were sustained, with the trial judge consistently limiting the testimony from both parties to "matters that have occurred since the [divorce] decree was entered."

The trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. App. 1995).

In this case, Father argues that the original award of alimony must have been premised on an implicit finding that Mother was unable to work. The record, however, contains ample reason for an award of periodic alimony in the absence of such an implicit finding. There is an obvious disparity in the parties' earning capacity, education and needs, even when Mother's current employment is considered. Coupled with Father's failure to seek a decrease in the periodic alimony

3

until Mother sought an increase in child support and alimony, some ten years after Mother became employed, the record contains a clearly sufficient basis for the trial court's decision not to permit either party to delve into evidence of events prior to the divorce decree. The trial court's decision on this issue is affirmed.

Both parties sought modification of the alimony award and appeal the trial court's decision not to modify the alimony. As noted above, Father asserts on appeal that the original alimony award was based on the assumption that Mother was unable to work. Since Mother has been employed for nearly ten years and now makes approximately $28,000 per year, Father contends she no longer needs the $300 per week periodic alimony. In addition, Father maintains that Mother is "wasteful," criticizing expenditures such as Mother's sale of the marital home and purchase of another home, increasing her monthly house note from $348 per month to approximately $600 per month, Mother's trade-in of her 1984 automobile for a newer automobile, her $15,000 retirement account, her expenditures for visits to the veterinarian for the family dogs, her expenditures for "an inordinately large amount of prescription medicine bills," and payments for checking account overdraft charges.

Mother contrasts her income of $28,000 per year with Father's income of over $200,000 per year, plus his wife's income from his medical practice of over $50,000 per year. She points to his farm with a five-bedroom house and a pool, his five vehicles, his interest in a Florida condominium, and his nearly $500,000 retirement account. Mother argues that the purchasing power of the original award of $300 per week in periodic alimony has been reduced since the divorce decree and the amount of periodic alimony should be increased.

Our review of the trial court's decision regarding whether to modify alimony is *de novo* with a presumption of correctness unless the preponderance of the evidence requires otherwise. *See Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. App. 1989). A modification of alimony requires "a substantial and material change of circumstances." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1997). The burden is on the party seeking the modification to prove a material change of circumstances. *See Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. App. 1991).

Clearly, Father has not demonstrated that a decrease in alimony is warranted. Indeed, Father's scrutiny of Mother's expenditures appears oppressive and his criticisms border on silliness, particularly when Mother's expenditures are contrasted with Father's affluent lifestyle. On the other hand, apart from expenditures more pertinent to child support, Mother did not demonstrate an

4

increased need for alimony. On the whole, the evidence indicates that the trial court did not err in refusing to modify the award of periodic alimony. The decision of the trial court on this issue is affirmed.

Mother appeals the trial court's child support award of $3,700 per month, with $700 of that monthly amount placed in an educational trust for Katie. Mother argues that under the child support guidelines, once the trial court found the private school tuition to be an extraordinary educational expense, it was required to increase the child support award to provide for these expenses. *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(5). Since a portion of the child support was to be placed in an educational trust, Mother contends that the practical effect of the trial court's ruling left Mother with less monthly income for the children's current needs since she is now obligated to pay Josh's tuition at McCallie and cannot utilize the portion that goes into a trust fund to pay it.

The child support guidelines provide as follows:

1240-2-4-.04 Criteria for Deviation from Guidelines.

(1)     Since these percentage amounts are minimums, the court shall increase the award calculated in Rule 1240-2-4-.03 for the following reasons:

***

(c) Extraordinary educational expenses and extraordinary medical expenses not covered by insurance <u>shall be added</u> to the percentage calculated in the above rule.

***

(3)     . . . When the net income of the obligor exceeds $10,000 per month, the court may consider a downward deviation from the guidelines if the obligor demonstrates that the percentage applied to the excess of the net income above $10,000 a month exceeds a reasonable amount of child support based upon the best interest of the child and the circumstance of the parties. The court may require that sums paid above the percentage applied to the net income above $10,000 be placed in an educational . . . trust fund for the benefit of the child.

Tenn. Comp. R. & Regs. 1240-2-4-.04 (emphasis added). Thus, under the guidelines, once the trial court finds that the child has extraordinary educational expenses, those expenses "shall be added" to the ordinary guidelines percentages. *See id.*; *see also Dwight v. Dwight*, 936 S.W.2d 945, 950 (Tenn. App. 1996) (citing *Economides v. Economides*, No. 02A01-9109-CV-00189, 1994 WL 95870 (Tenn. App. Mar. 24, 1994) (ordering obligor to pay $2,500 per month in child support, the guideline amount for three children, and pay the additional sum of $1,465 per month for private school tuition and fees); *Bostick v. Bostick*, No. 02A01-DH-00043, 1993 WL 90363 (Tenn. App. Mar. 30, 1993) (declining to deduct private school tuition payments made by obligor from the minimum percentage

5

set forth in the guidelines); *Carter v. Carter*, No. 03A01-9210-CH-00380, 1993 WL 17128 (Tenn. App. Jan. 28, 1993) (requiring obligor, whose income exceeded the income scale provided in the guidelines, to pay the amount set forth in the guidelines as well as private school tuition and expenses for the children)). While the guidelines provide that the trial court may order a downward deviation from the guideline amount in situations in which the obligor's net income exceeds $10,000 per month, such a downward deviation is based on a showing by the obligor that the guideline amount "exceeds a reasonable amount of child support based on the best interest of the child" and the parties' circumstances. *Id.* Where the trial court orders a deviation, the trial judge must make written findings that if the child support guidelines were applied, the result would be unjust or inappropriate under the facts of the case. *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(7); *see also Smith v. Smith*, No. 01A01-9609-CH-00404, 1997 Tenn. App. LEXIS 218 (Tenn. App. Mar. 27, 1997). This is true regardless of whether the deviation is upward or downward. *See State ex rel. Smith v. Moore*, No. 03A01-9705-JV-00190, 1997 Tenn. App. LEXIS 866 (Tenn. App. Dec. 5, 1997).

In this case, the trial court awarded approximately the guideline amount of child support, $3,700 per month, and ordered that $700 of that amount be placed in an educational trust for the parties' daughter Katie. No additional amount was awarded for the extraordinary educational expense for their son's private school tuition. The trial court did not state in its findings that it was ordering a downward deviation from the guideline amount. Indeed, the evidence does not support a finding that applying the guideline percentages to Father's income level, including the amount exceeding $10,000 per month, "exceeds a reasonable amount of child support," considering the best interest of the children and the parties' circumstances. The trial court did not state its reason for requiring that $700 per month be placed in an educational trust fund for Katie. Of the $3,700 monthly child support award in this case, approximately $500 of the total child support award is attributable to Father's net income exceeding $10,000 per month. In the absence of evidence supporting a downward deviation and a specific finding thereof, the guidelines provide only that the portion of child support attributable to net income over $10,000 per month may be paid into an educational trust.

Accordingly, we find that the trial court only had authority to order $500 of the child support award to be placed in an educational trust fund for Katie.

Under these circumstances, we find that the trial court erred in failing to add an appropriate amount to the guideline percentages to account for Josh's extraordinary educational expense. Provided an appropriate amount is added to the child support for Josh's private school expense, we find no abuse of discretion in requiring that up to $500 of the child support be placed in an educational trust fund for Katie. The amount that can be directed into an educational trust fund in this case is limited to $500 per month. We remand the case to the trial court for an award of additional child support, based on Josh's extraordinary educational expense, and a reduction of the amount to be placed in an educational trust fund to no more than $500.

Father also contends that the trial court erred in awarding attorney's fees and expenses to Mother. Father argues that such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay her own legal expenses. Trial courts have wide discretion in awarding attorney's fees, and an appellate court will not reverse the trial court's decision unless there has been a clear abuse of that discretion. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. App. 1996) (citing *Smith v. Smith*, 02A01-9109-CH-00209, 1993 WL 90378, at *6 (Tenn. App. 1993)). From our review of the record, there has been no abuse of discretion in the award of attorney's fees to Mother. The decision of the trial court on this issue is affirmed.

Mother also seeks attorney's fees on appeal. We find it appropriate to award Mother her attorney's fees for this appeal, and remand the cause to the trial court for a determination of the appropriate amount.

In sum, we affirm the trial court's decision to limit the evidence from both parties to matters occurring since the original decree of divorce. We affirm the trial court's decision not to modify the award of periodic alimony. We modify the award of child support to require an additional amount for the parties' son's extraordinary educational expense, and remand for a determination of the appropriate additional amount. We also modify the amount to be placed in an educational trust fund to no more than $500 per month and remand for a reduction to that amount. In all other respects, the award of child support is affirmed. The trial court's decision to require Father to pay $15,000 toward Mother's attorney's fees and other costs of litigation is affirmed. Father is also required to pay Mother's attorney's fees for this appeal, and the cause is remanded to the trial court for a

7

determination of the appropriate amount.

The decision of the trial court is affirmed in part, reversed in part, modified and remanded as set forth above. Costs are assessed against the Appellant, for which execution may issue if necessary.

 

 

_____<br>**HOLLY KIRBY LILLARD, J.**

_____

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**